**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARLENE LOVE, individually and as Independent Administrator of the Estate of DEREK LOVE, Deceased. | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.     18 CV 2742 |
| CITY OF CHICAGO, a municipal corporation; Officer DAVID BENITEZ #12678, individually and as an agent of Defendant, CITY OF CHICAGO; Officer JUAN RIVERA  #17308, individually and as an agent of Defendant, CITY OF CHICAGO; and Officer ALFONSO HERRERA #14777, individually and as an agent of Defendant, CITY OF CHICAGO | ) ) ) ) ) ) ) ) ) ) | Judge Sara L. Ellis<br><br>Magistrate Judge Sheila Finnegan |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF CHICAGO'S RULE 12(b)(6)
PARTIAL MOTION TO DISMISS COUNTS I AND II OF PLAINTIFF'S FIRST
AMENDED COMPLAINT**

NOW COME(S) the Plaintiff, ARLENE LOVE, individually and as Independent

Administrator of the Estate of DEREK LOVE, Deceased, by and through her attorneys,

ROMANUCCI & BLANDIN, LLC, and respectfully prays the Court enter an order denying

Defendants Rule 12(b)(6) Partial Motion to Dismiss Counts I and II of Plaintiff's First Amended

Complaint. In support thereof, Plaintiff states as follows:

**I.     Introduction**

This case arises from the July 21, 2016, shooting death of Derek Love by Chicago police

officers, Benitez, Rivera, and Herrera. On July 17, 2017, Plaintiff filed her complaint at law

alleging willful and wanton conduct by Defendant officers and the City of Chicago. On April 6,

2018, Plaintiff amended adding federal claims. On April 18, 2018, Defendants removed the

matter to federal court.

1

## II.    Fact Statement

1.    On July 21, 2016, decedent, Derek Love left his mother's home and purchased items including packaged ground lamb. Amd. Compl., attached hereto as Ex. B, ¶ 14-15.

2.    Mr. Love had in his possession a small black draw-string nylon Nike bag, a few unopened cans of beer, a cell phone, a computer tablet, and his identification.  Id. ¶ 13.

3.    Mr. Love stopped on his way home and was on his cell phone on a bench when Defendant Officers approached him regarding suspicious activity. Id. ¶ 17-23.

4.    The Defendant Officers were on bike patrol at Battle of Fort Dearborn Park, when they were informed that an individual was "acting suspiciously". Id. ¶¶ 18, 22.

5.    Defendant Officers approached Mr. Love such that he was not free to leave and questioned him about what he was doing in the park. Id. ¶ 24.

6.    Plaintiff alleged that Mr. Love was not violently resisting, did not pose a threat, and did not point a weapon in the direction of the Defendant Officers. Id. ¶ 27, 28.

7.    Plaintiff alleges that after Officer Benitez discharged his service weapon resulting in a self-inflicted wound all three Defendant Officers discharged their weapons at Mr. Love numerous times. Id. ¶ 29-31.

8.    Plaintiff alleged that Mr. Love did not pose a threat of harm to the Defendant Officers at the time they shot and killed him, including one shot while Mr. Love lay on the ground. Id. ¶ 32, 33.

9.    The Mayor's Police Accountability Task Force concluded among other things that the six months of academy training could not stand up to a career of influences on the street by veteran officers – to protect and cover for your partner even at the expense of integrity. Id. ¶ 46.

10.    Plaintiff's Amended Complaint alleged that the "Code or Silence" and/or "Blue Shield," within the City of Chicago covered up and condoned police misconduct to shield its officers,

allowed Defendant Officers to act with impunity and feel as though their acts of misconduct would go uninvestigated, deficiently investigated, and/or undisciplined. Id. ¶¶ 50.

11.     Plaintiff alleged that Defendant City of Chicago participated in the Code of Silence when it failed to hold the Defendant Officers accountable for the shooting of Mr. Love and attempted to hide or cover up Defendant Officer's self-inflicted gunshot wound. Id. ¶ 51-52.

12.     The collective policies, practices, and customs engendered the understanding among Chicago police officers that they can act with impunity without the fear of consequences and that the persistent and widespread *de facto* policies practices and customs were the moving force behind the Defendant Officers' conduct resulting in the death of Mr. Love. Id. ¶ 54.

13.     Plaintiff alleged in her Amended Complaint that the City of Chicago's practices and customs, including the Code of Silence and their failure to train or otherwise hold their police officers accountable caused the death of Mr. Love. Id. ¶ 53, 55.

## III.    Legal Standard

It is not the purpose of a 12(b)(6) motion to dismiss to decide the merits. *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir.1989). The plaintiff's burden at the pleading stage is only to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Meeting that burden requires only that the plaintiff provide a "short and plain statement of the claim showing that [she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The court may dismiss a complaint pursuant to Rule 12(b)(6) only if it is clear that no relief is possible under any set of facts that could be established consistent with the allegations." *Tome Engenharia E. Transporrtes, Ltd. v. Malki*, 1996 WL 172286, at *3 (N.D. Ill. 1996). When ruling on a 12(b)(6) motion to dismiss, the court construes "the complaint in the

light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). As demonstrated in Plaintiff's Amended Complaint and below, Plaintiff has more than met her burden per this stage in the litigation. The Amended Complaint alleges facts that, accepted as true, state a plausible claim for relief against Defendants for the alleged misconduct.

## IV.     Argument

### A.  Counts I and II against Defendant City of Chicago are not duplicative.

In Counts I and II of Plaintiff's Amended Complaint, Plaintiff not only alleged that Defendant City of Chicago acted willfully and wantonly in its failure to train and through its agents' actions; Plaintiff also specifically alleged that the Code of Silence and/or Blue Shield allowed the Defendant Officers impunity and was the moving force and a cause of Mr. Love's death. Ex. B, ¶¶ 34-56. Plaintiff has sufficiently alleged that the Defendant City of Chicago acted willfully and wantonly in their upholding of the Code of Silence among its officers, creating an environment of impunity, hiding and/or covering up Officer Benitez's self-inflicted wound and not providing sufficient training to Defendant Officers. Ex. B, ¶¶ 51-52. These allegations sufficiently allege Defendant City of Chicago's acts and failures caused Mr. Love's death in a manor separate from Plaintiff's *respondeat superior claim* and those willful and wanton actions taken on the part of the Defendant Officers alone.

Defendant City of Chicago argues that Illinois courts have "well-established" that once an employer is imputed liability under *respondeat superior,* any cause of action on the employer's supervision, entrustment, or **training** is duplicative. Though true for actions brought regarding supervision or entrustment, Defendant City of Chicago does its best to stretch the same holdings to claims of willful and wanton failure to train.

Defendant City of Chicago cites to *Thompson v. N.E. Ill. Reg'l Commuter R.R. Corp.*, 854 N.E.2d 744 (Ill.App.Ct. 1st Dist. 2006), to establish that claims regarding supervision, training or entrustment are "duplicative and unnecessary". However, the *Thompson* court specifically ruled that the state law claims regarding training, qualifications, and supervision of the railroad engineer are preempted by the Federal Railroad Safety Act (FRSA), which has no applicability in the instant case. *Thompson*, 854 N.E.2d at 747. The *Thompson* Court determined, following the similar ruling in *Gant*, that negligent entrustment and negligent retention claims are duplicative of the theory of *respondeat superior*.[1] *Id.* at 747-48. Similarly, *Lambert v. Jung*, 2015 WL 6736674, at *3 (N.D. Ill. 2015), indicates that negligent hiring, entrustment or supervision, excluding training, are duplicative of *respondeat superior*.

Neither *Thompson, Lambert,* nor *Gant* holds that negligent training or training in any regard is barred or duplicative of a theory of *respondeat superior*. *See Thompson*, 854 N.E.2d 744; *Lambert v. Jung*, 2015 WL 6736674 (N.D. Ill. 2015); *Gant v. L.U. Transp., Inc.*, 331 Ill. App.3d 924, 930 (1st Ill.App.Ct. 2002) (holding specifically that "a plaintiff may not proceed against the employer on a theory of negligent hiring, negligent retention, or negligent entrustment"). The only case Defendant City of Chicago cites to where negligent training was considered in any regard is *Farnik, et* al. In *Farnik,* the court dismisses claims for negligent hiring, supervision, and retention, including claims of negligent training without explanation while simultaneously retaining a separate willful and wanton count against the City. *Farnik, et*

---

[1] "The doctrine of *respondeat superior* and the doctrine of negligent entrustment are simply alternative theories by which to impute an employee's negligence to an employer. Under either theory, the liability of the principal is dependent on the negligence of the agent. If it is not disputed that the employee's negligence is to be imputed to the employer under the doctrine of *respondeat superior*, then the cause of action for negligent entrustment is duplicative and unnecessary." *Thompson v. N.E. Ill. Reg'l Commuter R.R. Corp.*, 854 N.E.2d 744, 747 (Ill. App. Ct. 1st 2006) (citing *Gant* at 929).

*al. v. Chi. Police Department, et al.*, 14 CV 3899, Docket No. 63 (Lefkow, July 13, 2015),
attached hereto as Exhibit C.

Plaintiff's allegations are more appropriately analogous to *Lockett. Lockett* carves out an
exception where the defendant employee was held to a standard of negligence while the
employer was held to willful and wanton conduct. *Lockett v. Bi-State Transit Auth.,* 94 Ill. 2d 66,
74 (1983). The *Lockett* Court reasoned that it was possible for the jury to find the employer
liable and not the defendant employee, due to the different standards. *Id.*at 74. Similar to
*Lockett,* the Defendant City of Chicago in the instant case can be found willful and wanton for
their lack of training, creating and maintaining the Code of Silence, and creating the environment
of impunity. Even if the Defendant Officers were not found liable for willful and wanton
conduct, a jury could determine that Defendant City of Chicago's willful and wanton lack of
training was a cause of Mr. Love's death.

Judge Posner described the concept of *respondeat superior* in *McKinnon v. City of
Berwyn*, 750 F.2d 1383, 1390 (7th Cir. 1984): "… the doctrine of respondeat superior, which
makes the employer liable without fault on his part for torts committed by his employees in the
furtherance of their employment". The Plaintiff here alleges fault on the part of the employer –
Defendant City of Chicago – as a separate claim from Defendant Officers. As a matter of
common sense, the Defendant Officers could not be liable for failing to properly train
themselves. Moreover, Plaintiff has alleged that the Defendant Officers benefited from the
environment of impunity caused by the Defendant City of Chicago's Code of Silence in knowing
that not only would a use of excessive force be unpunished but that a self-inflicted wound would
be hidden or covered up. The foregoing actions could not as a matter of course stem only from
the Defendant Officers but rather the entity of the City of Chicago with its innumerable agents. A

dismissal of Counts I and II would prejudice the Plaintiff's ability to hold the City of Chicago accountable for those actions stemming from sources beyond the three named Defendant Officers.

Finally, Defendant City of Chicago cites cases to relay that the Defendants share joint and several liability. This proposition has little to no bearing on the issue at hand. The Plaintiff's Amended Complaint does not attribute different injuries to different claims nor does it request the assessment of damages separately against particular Defendants, rather it seeks to bring all appropriate and available claims for the Plaintiff's damages. Even then, "the injured party may proceed to judgment against any or all of the responsible actors in a single or in several different actions", *Watts v. Laurent*, 774 F.2d 168, 180 (7th Cir. 1985) (citing Restatement (Second) of Torts, §§ 875, 879, 882, 885), just as Plaintiff does here.

## B. Defendant City of Chicago is not entitled to immunity under 745 ILCS 2-201 of the Tort Immunity Act.

Defendant City of Chicago is not afforded immunity under §2-201. Defendant "bears the burden of properly raising and proving" the applicability of the Tort Immunity Act. *Smith v. City of Chi.*, 143 F. Supp. 3d 741, 762 (N.D. Ill. 2015) (citing *Van Meter v. Darien Park Dist.*, N.E.2d 273, 280 (Ill. 2003) ("Because the immunities afforded to governmental entities operate as an affirmative defense, those entities bear the burden of properly raising and proving their immunity under the Act.")). Plaintiff's Amended Complaint clearly alleges the inapplicability of §2-201 to Defendant City of Chicago. For §2-201 to apply, Defendant City of Chicago must be able to demonstrate, while accepting all well-pled allegations as true, that its alleged conduct was both a determination of policy *and* discretionary in nature in failing to train Defendant Officers. *See Hogan v. Smith*, 2012 WL 1435402, at *3 (S.D. Ill. 2012) (emphasis added).

Plaintiff alleges that Defendant City of Chicago had no discretion in implementing, adhering, and training on a sufficient use of force policy, or continuum, consistent with that used by law enforcement agencies in Illinois. Ex. B, ¶¶ 62(f)-(g); 72(f)-(g). Section 2-201 does not afford Defendant City of Chicago immunity for its failure to train. Pursuant to the Tort Immunity Act:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

745 ILCS 10/2–201. "Section 2–201 bars a plaintiff's claim if the action leading to the plaintiff's injury involved both a policy decision and a discretionary act." *Hogan*, 2012 WL 1435402 at *3; *see also Harineck v. 161 N. Clark St. Ltd. P'shp.*, 692 N.E.2d 1177, 1181 (Ill. S. Ct. 1998).

"A policy decision is one that requires the public employee to balance competing interests and make a judgment call as to which course of action will best serve those interests." *Hogan*, 2012 WL 1435402 at *3; *see Van Meter v. Darien Park Dist.*, 799 N.E.2d 273, 281–82 (Ill. 2003). "A discretionary act is one that is unique to a particular public office and performed with a degree of flexibility." *Hogan*, 2012 WL 1435402 at *3; *see also Snyder v. Curran Twp.*, 657 N.E.2d 988, 993 (Ill. S. Ct. 1995). "By contrast, Section 2–201 does not cover the performance of ministerial actions." *Hogan*, 2012 WL 1435402 at *3; *see In re Chi. Flood Litig.*, 680 N.E.2d 265, 272 (Ill. S. Ct. 1997). "A ministerial act is one that is performed on a given state of facts in a prescribed manner, under the mandate of legal authority, without reference to an official's discretion regarding the propriety of the act." *Hogan*, 2012 WL 1435402 at *3; *see Snyder*, 657 N.E.2d at 993. "Ministerial acts do not involve any sort of judgment or determination but instead involve the execution of a set task that is 'absolute, certain, and imperative.'" *Hogan*, 2012 WL 1435402 at *3; *see In re Chi. Flood Litig.*, 680 N.E.2d at 272.

Defendant relies on *Taylor v. City of Chi.*, 1997 WL 51455 at *4 (N.D. Ill. 1997), to support their proposition that police department hiring and training is always discretionary. *See generally Taylor*, 1997 WL 51455 at *4 (the court dismissed the plaintiff's complaint on the basis that §2-201 does not contain a willful and wanton exception). However, Plaintiff's Amended Complaint, taken on its face, alleges facts that clearly show Defendant City of Chicago's failures to implement and train on a particular policy was not discretionary. Subsequent to the *Taylor* decision, several Illinois courts have held that negligent training claims could be considered ministerial based on the allegations contained in the complaint. *See Smith v. City of Chi.,* 143 F. Supp. 3d 741, 762 (N.D. Ill. 2015) (denying motion to dismiss plaintiff's negligent supervision claim against the City of Chicago on the basis of 2-201, citing prior cases).

Defendant City of Chicago is not afforded immunity under §2-201, as Plaintiff has alleged Defendant City of Chicago failure to train Defendant Officers was not discretionary. In *Hogan*, defendant officer was traveling in excess of 78 miles per hour in a 45 miles per hour zone when he collided with the vehicle in which plaintiff was a passenger. *Hogan v. Smith*, 2012 WL 1435402, at *1 (S.D. Ill. 2012). In count V, plaintiff brought a claim of negligent training and supervision against the City of Cairo. *Hogan*, 2012 WL 1435402 at *1. In denying defendant's motion to dismiss, the *Hogan* court noted that while it may be intuitive that training of police officers would require discretion and determination of policy, "'cases are not to be decided on the basis of intuition.'" *Id.* at 3 (quoting *Patton v. Chi. Heights*, 2010 WL 1813478, at *3 (N.D. Ill. 2010)). Where allegations leave open the question of whether training and supervision in a particular instance is ministerial rather than discretionary, the "complaint withstands dismissal on the pleadings pursuant to Rule 12(b)(6)." *Hogan*, 2012 WL 1435402 at *3. The *Hogan* court went on to say, "[t]he act of training and supervision in question could

easily be ministerial rather than discretionary, and [defendants] do not point to any allegations in the complaint to contradict this possibility." *Id.* at *3.

In *Patton v. Chicago Heights*, plaintiff brought a claim of negligent training and supervision of police officers against the City of Chicago Heights. 2010 WL 1813478, at *1 (N.D. Ill. 2010). The *Patton* plaintiff alleged that the City of Chicago Heights had "'a duty to properly train and supervise its officers regarding their use of force" and "owes a reasonable standard of care to its residents and citizens visiting the municipality.'" *Id.* at *2.  The *Patton* court discussed plaintiff's allegations as follows: "it may well be that employees training police officer[s] in Chicago Heights might not be determining policy and exercising discretion and thus not be entitled to immunity under the Act. But one cannot tell; the resolution 'is not apparent on the face of the complaint.'" *Id.* at *3. Further, the *Patton* court stated, "it is certainly not impossible that the training of police officers in Chicago Heights may be ministerial, and may be inflexibly dictated by a set of rules and orders imposed on that do not allow any deviation." *Patton v. Chi. Heights*, 2010 WL 1813478, at *3 (N.D. Ill. 2010).  Similar to the plaintiffs in both *Hogan* and *Patton*, Plaintiff Love has alleged no allegations contradicting the possibility that the lack of training and supervision was ministerial in nature.

In *Snyder v. Curran Township*, plaintiff sued the township for failing to place a warning sign identifying a sharp turn on a rural road in conformity with the Illinois Vehicle Code. *Snyder v. Curran Tp.*, 657 N.E.2d. 988, 993 (Ill. 1995). The Illinois Supreme Court found the Township was not immune under §2-201 reasoning that "where ... tailored statutory and regulatory guidelines place certain constraints on the decisions of officials, a court should be reluctant to label decisions falling wholly outside the established parameters as 'discretionary'". *Snyder v. Curran Twp.*, 657 N.E.2d. 988, 993 (Ill. 1995).

Plaintiff's Amended Complaint makes clear Defendant City of Chicago had no discretion to fail to train Defendant Officers on the appropriate use of force. Plaintiff's Amended Complaint alleges that Defendant City of Chicago, with an utter indifference and conscious disregard for Mr. Love's safety, failed to implement, adhere to, and properly instruct and train on, a use of force continuum or a sufficient use of force policy consistent with that used by law enforcement agencies in Illinois. Ex. B, ¶¶ 62(f)-(g); 72(f)-(g). Taking the inferences of these allegations in Plaintiff's favor, "consistent with that used by law enforcement agencies in Illinois" indicates Defendant City of Chicago had no discretion to fail to train Defendant Officers on the proper use of force.

In addition, Defendant City of Chicago is statutorily required to provide training on use of force. 50 ILCS 705/7(h) provides: "Minimum in-service training requirements, which a police officer must satisfactorily complete at least annually. Those requirements shall include law updates and use of force training which shall include scenario based training, or similar training approved by the Board." 50 ILCS 705/7(h). Further, Defendant City of Chicago has a general order on use of force indicating training on force is anything but discretionary. Ex. A, General Order G03-02, Use of Force. As in *Snyder*, Plaintiff here alleged use of force training by statutory and policy guidelines are not discretionary. Plaintiff's allegations make clear that Defendant City of Chicago's failure to train is both ministerial in nature and not related to a policy decision. As no allegations within the Amended Complaint contradict that adherence and training on this particular conduct is ministerial, Defendant's Partial Motion to Dismiss should be denied.

**C. Defendant City of Chicago is not entitled to immunity under 745 ILCS 4-102 of the Tort Immunity Act.**

Defendant's Motion to Dismiss based on §4-102 of the Tort Immunity Act should be denied. Section 4-102 of the Tort Immunity Act reads as follows:

> Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals.

745 ILCS 10/4-102. At the time Mr. Love was shot, Defendant Officers were not undertaking to aid, assist, or rescue Mr. Love. Instead, Defendant Officers were responding to a call regarding someone "acting suspiciously." Ex. B, ¶22. This type of police conduct is not provided immunity under §4-102. Further, the Defendant City of Chicago's failure to train its officers on how to properly respond to a call requiring investigation of a person does not implicate the adequacy of the Chicago Police Department's services. The alleged conduct that caused Mr. Love to be shot and killed is not what the legislature sought to protect.

### i. Defendant Officers were not aiding, assisting or rescuing Derek Love when they shot and killed him.

Defendant misconstrues the purpose of §4-102. "Police efforts to aid, assist, or rescue individuals are within the scope of 'police protection or service' and are covered under section 4-102 of the [Immunity Act]." *Est. of McIntosh v. City of Chi.*, 2015 WL 5164080, at *4 (N.D. Ill. 2015); *see e.g. Payne v. City of Chi.*, 16 N.E.3d 110, 119-21 (Ill. App. Ct. 1st Dist. 2014) (finding where plaintiff's allegations included "*requested aid* in transporting plaintiff to the nearest hospital" "call made for emergency services … to *render assistance*" and "attempted to and did intervene *in attempting to render aid and care to plaintiff*" implicated §4-102's immunity for "police efforts to aid, assist, or rescue individuals.") (emphasis added). Plaintiff has not alleged any such conduct on the part of Defendant Officers.

The court in *Estate of McIntosh*, reasoned that if a plaintiff alleges a defendant officer was "responding to a call for police assistance—[it would] directly implicate Section 4–102." 2015 WL 5164080 at *4. An officer "responding to a call that a crime may have just been committed … investigating a crime or traffic accident, making an arrest or issuing a citation, or quelling a public breach of peace[,]" is not conduct considered immune under §4-102. *Id.*

Nowhere in Plaintiff's Amended Complaint has Plaintiff pled Defendant Officers were responding to a request for police assistance. In fact, Plaintiff has pled that Defendant Officers were on bike patrol at the time they encountered Mr. Love, Ex. B, ¶18, and that they were informed by a witness that Mr. Love was "acting suspiciously." Ex. B, ¶22. Defendant Officers then proceeded to question Mr. Love about what he was doing in the park. Ex. B, ¶24. Plaintiff's allegations clearly indicate Defendant Officers were *investigating* a report of a "suspicious" person. Further, Plaintiff has pled Defendant Officers in no way provided Mr. Love with aid, assistance or rescue. Instead, Defendant Officers drew their service weapons, discharged the weapons in Mr. Love's direction multiple times, and ultimately unnecessarily shot and killed Mr. Love. Ex. B, ¶¶29-33. Investigation of suspicious behavior that results in the unnecessary death of an individual is not the type of conduct the legislature meant to afford absolute immunity under §4-102.

## ii. Defendant City of Chicago's failure to train its officers on use of force does not implicate 745 ILCS 4-102.

Defendant inaccurately states that any claim of a failure to properly implement and train Defendant Officers on use of force implicates absolute immunity under §4-102. Motion to Dismiss, ECF No. 28. To the contrary, "a claim based on failure to train does not always implicate the structural adequacy of police protection services." *LaFond v. City of Kankakee*, 2010 WL 503009, at *4 (C.D. Ill. 2010) (citing *DeSmet ex rel. Estate of Hays v. County of Rock*

*Island*, 848 N.E.2d 1030, 1041 (Ill. 2006)). "Instead, courts must consider the particular areas where the training was purportedly lacking to determine whether Section 4–102 provides absolute immunity for the conduct of the public entity." *LaFond*, 2010 WL 503009, at *4.

Courts have previously held §4-102 applies where police inadequately responded or failed to respond to a request for police assistance. *DeSmet,* 848 N.E.2d at 1040 ("Appellate panels have held that 'police protection service' under section 4–102 is implicated where police are called upon to assist or locate motorists who have driven off the roadway.") (internal citations omitted). Plaintiff Love alleges Defendant City of Chicago's failure to train on use of force led to the shooting and death of Mr. Love. This conduct is not police assistance or service, nor did Defendant Officers' actions occur in response to a request for police assistance.

To support their claim, Defendant City of Chicago erroneously relies on the court's rational and holding in *Id.* at 1030. The court in *DeSmet* was tasked with determining whether a municipality's failure to train and supervise its employee and its failure to "'have in force procedures which would ensure that **all emergency calls for assistance** are responded to in a timely fashion'" implicated absolute immunity under §4-102. *Id.* at 1041. In holding §4-102 applied, the *DeSmet* court reasoned these allegations "implicate[d] the adequacy of services provided to the general public—services that are intended to determine whether and when police officers will be dispatched into the community **in response to specific calls for assistance**." *Id.* at 1041 (emphasis added). It was the city's failure to train its emergency dispatch services to "deliver personalized police services to the scene [of an accident] in a timely manner[,]" that implicated §4-102. *Id.* at 1041. *DeSmet* is inapplicable to the case at hand.

The court in *LaFond v. City of Kankakee*, in a case arising from a police chase, further clarifies that §4-102 does not apply to allegations of a failure to train on use of force. 2010 WL

14

503009 (C.D. Ill. 2010). The *LaFond* plaintiff alleged the defendant city "failed to properly train and supervise its officers regarding operating a police car, resulting in [defendant's] act of striking plaintiff with her car." *Id.* at *1. The *LaFond* court, in holding 4-102 did not apply, reasoned plaintiff had alleged the city had failed to train on "the manner in which the City provided police protection services, not the City's failure to provide those services." *Id.* at *4.

As discussed above, Plaintiff has in no way alleged Mr. Love's death was caused by Defendant Officers failure to respond or inadequate response to a request for police assistance. In counts I and II, Plaintiff alleged Defendant City of Chicago failed to properly train Defendant Officers on use of force. Ex. B, ¶¶62(f)-(g); 72(f)-(g). This type of training is necessary and utilized by officers investigating or responding to a crime – Conduct not within the purview of §4-102. Plaintiff's factual allegations indicate Defendant Officers were investigating a suspicious person, not responding to an emergency call or providing police assistance, when they shot and killed Mr. Love. Ex. B, ¶18, 22, 24, 29-33. These allegations, taken on their face, do not allege Defendant City of Chicago's failure to train on police aid, assistance or rescue caused Mr. Love's death. As Defendant has failed to establish they are afforded immunity under §4-102, their Partial Motion to Dismiss Plaintiff's Amended Complaint should be denied.

**V.  Conclusion**

For the reasons set forth above, Plaintiff, ARLENE LOVE, individually and as Independent Administrator of the Estate of DEREK LOVE, respectfully requests that this Honorable Court enter an order denying Defendants' 12(b)(6) Partial Motion to Dismiss or in the alternative, grant Plaintiffs leave to file an amended pleading.

/s Bhavani Raveendran_____
Attorney for Plaintiff


Bhavani Raveendran
**ROMANUCCI & BLANDIN, LLC**
321 North Clark Street, Suite 900
Chicago, Indiana 60654
Tel: (312) 458-1000
Fax: (312) 458-1004
braveendran@rblaw.net


## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on the 5th day of September, 2018, a true and correct copy of the above and foregoing instrument was sent via CM/ECF Notification, mailed by U.S. Mail, first Class postage prepaid and/or sent electronically to:

**TO:**
Marion Moore Marion.Moore@cityofchicago.org
Maria Magginas Maria.Magginas2@cityofchicago.org
David T. Hartmann David.Hartmann@cityofchicago.org
Kristin Pinkston Kristin.Pinkston@cityofchicago.org
Caroline Fronczak Caroline.Fronczak@cityofchicago.org
Victoria Benson Victoria.Benson@cityofchicago.org
Stefanie Sotomayor Stephanie.Sotomayor3@cityofchicago.org
Iris Chavira Iris.Chavira@cityofchicago.org
Assistant Corporation Counsel, City of Chicago
Federal Civil Rights Litigation Division
30 North LaSalle Street, Suite 900
Chicago, Illinois 60602

_____s/ *Bhavani Raveendran*
Bhavani Raveendran