# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ARLENE LOVE, individually and as Independent Administrator of the Estate of DEREK LOVE, Deceased, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF CHICAGO, a municipal corporation; Officer DAVID BENITEZ #12678, individually and as an agent of Defendant, CITY OF CHICAGO; Officer JUAN RIVERA #17308, individually and as an agent of Defendant, CITY OF CHICAGO; and Officer ALFONSO HERRERA #14777, individually and as an agent of Defendant, CITY OF CHICAGO, <br><br> Defendants. | No. 18 C 2742 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

On July 21, 2016, Derek Love ("Derek") died after an encounter with Chicago Police Officers David Benitez, Juan Rivera, and Alfonso Herrera (collectively, the "Defendant Officers"). Derek's sister, Arlene Love, the administrator of his estate, filed this case against the Defendant Officers and the City of Chicago. In her first amended complaint, she brings wrongful death and survival claims for willful and wanton conduct against the Defendant Officers and the City (Counts I–VIII). She also raises federal claims for excessive force against the Defendant Officers (Count IX) and *Monell* claims against the City for failure to train and investigate, and for the perpetuation of a code of silence (Counts X and XI). The City moves to dismiss the claims for willful and wanton conduct raised against it in Counts I and II of the first amended complaint. It also asks the Court to bifurcate the *Monell* claims (Counts X and XI) and stay *Monell* discovery. The Court concludes that the independent state law claims against the

City are not duplicative based on the City's acknowledgment of *respondeat superior* liability and that the first amended complaint does not reveal a basis for finding immunity. Further, in part because these state law claims, which are based on some of the same allegations underlying Love's *Monell* claim, can proceed, the Court does not find bifurcation of the *Monell* claims appropriate at this time.

## BACKGROUND[1]

On July 21, 2016, Derek stopped in the Battle of Fort Dearborn Park on his way home from his mother's house. He had with him a Nike bag, which contained several unopened cans of beer, a cell phone, a computer tablet, his identification, and some items he had just purchased from a store. Derek sat down on a bench in the park and began talking on his cell phone. An individual approached the Defendant Officers, who were on bike patrol in the park, and told them Derek was "acting suspiciously." Doc. 1-1 ¶ 22. The Defendant Officers then encircled Derek and asked him about his presence in the park. When Derek began walking away, the Defendant Officers drew their weapons and pointed them at him. Benitez discharged his weapon, which caused a self-inflicted gunshot wound. The Defendant Officers then shot at Derek, fatally striking him in his back, chest, left wrist, stomach, left side, right hip, left hip, and left leg. Although Benitez reported in his Tactical Response Report that his gunshot wound was self-inflicted, the City attempted to hide or cover-up this fact. The City did not hold the Defendant Officers accountable for shooting Derek.

---

[1] The facts in the background section are taken from the first amended complaint and exhibits attached thereto and are presumed true for the purpose of resolving the City's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

2

## ANALYSIS

**I.    Motion to Dismiss**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The City moves to dismiss the independent state law claims brought against it for willful and wanton conduct. It acknowledges that, pursuant to *respondeat superior*, it has an obligation to indemnify the Defendant Officers for any compensatory damages assessed against them. The City argues that any independent state law claims against it for failing to implement, adhere to, and train its officers on a use of force continuum consistent with that used by Illinois law enforcement agencies cannot proceed because the City's acknowledgement of liability under *respondeat superior* makes the independent claim duplicative and unnecessary.[2]

---

[2] Love argues in her response that her claim for willful and wanton misconduct against the City addresses the City's upholding of a code of silence among its officers, but Counts I and II of the first amended complaint do not include or incorporate any allegations regarding a code of silence. In her response, Love points to paragraphs 34–56 of the first amended complaint as allegations regarding the code of silence. But Count I only incorporates paragraphs 1–21, Doc. 1-1 ¶ 57, and Count II incorporates paragraphs 1–16, *id.* ¶ 68. Although this may be attributed to an oversight when amending the complaint,

Under Illinois law, "once an employer admits responsibility under *respondeat superior*, a plaintiff may not proceed against the employer on another theory of imputed liability such as negligent entrustment or negligent hiring." *Gant v. L.U. Transp., Inc.*, 770 N.E.2d 1155, 1158, 331 Ill. App. 3d 924, 264 Ill. Dec. 459 (2002). The reasoning behind this principle is that additional liability should not be imposed on the employer where the employer's liability "is predicated initially on, and therefore is entirely derivative of, the negligence of the employee" and so "cannot exceed the liability of the employee." *Id.* at 1159. Some courts in this district have extended the principle to negligent training claims, including where a plaintiff alleges a municipality did not properly train its officers regarding the use of force. *See Johnson v. First Student, Inc.*, No. 18 C 50061, 2018 WL 5013918, at *1 (N.D. Ill. Oct. 16, 2018) (collecting cases); *Gibson v. City of Chicago*, No. 13 C 3273, 2013 WL 6698164, at *2–3 (N.D. Ill. Dec. 17, 2013) (finding claim of negligent training and supervision despite a history of officer excessive force duplicative of *respondeat superior* claim).

But an exception exists where a principal's culpability may be greater than that of the agent. *Lockett v. BiState Transit Auth.*, 445 N.E.2d 310, 314, 94 Ill. 2d 66, 67 Ill. Dec. 830 (1983). "Unlike the situation in negligent-entrustment cases, where the misconduct of the defendant-principal is of the same level of culpability as that of the tortfeasor-agent, defendants-principals may be found guilty of willful and wanton misconduct even though the tortfeasors-agents to whom the instrumentality causing the injury was entrusted may have been only negligent." *Id.* As a result, "the necessity of proof of the defendant-principal's misconduct in

---

the Court focuses solely on whether Love can pursue her state law claims against the City for failure to implement and train officers on a use of force continuum at this time. The Court notes, however, that the City's argument in reply that Love has not presented facts or evidence to support a code of silence places a higher burden on Love than required at the pleading stage.

4

connection with willful-and-wanton entrustment actions is not eliminated simply because that party acknowledges an agency relationship with the tortfeasor." *Id.*

Such a situation could occur here, even though the Illinois Tort Immunity Act bars liability against the Defendant Officers unless Love establishes willful and wanton conduct. *See* 745 Ill. Comp. Stat. 10/2-202 ("A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct."). To prevail on a claim of willful and wanton misconduct, Love must establish the elements of a negligence claim in addition to showing the defendant had "either a deliberate intention to harm or a conscious disregard for the plaintiff's welfare." *Jane Doe-3 v. McLean County Unit Dist. No. 5 Bd. of Dirs.*, 973 N.E.2d 880, 887, 2012 IL 112479, 362 Ill. Dec. 484 (2012). The possibility exists that Love may only prove the Defendant Officers' negligence, meaning she cannot recover against the Defendant Officers, while at the same time demonstrating that the City engaged in willful and wanton conduct, allowing recovery on this basis. *See Lockett*, 445 N.E.2d at 314. Under such a scenario, the City's acceptance of *respondeat superior* liability would not address the City's independent conduct that caused Derek's injury. Accordingly, the Court cannot dismiss the independent claims against the City as duplicative of the City's admitted *respondeat superior* liability.[3]

The Court must therefore address the City's alternative arguments that the Illinois Tort Immunity Act bars these claims. Although immunity is an affirmative defense that Love need

---

[3] The Court acknowledges that this conclusion differs from that reached in *Lambert v. Jung*, No. 13 C 6030, 2015 WL 6736674, at *4 (N.D. Ill. Nov. 4, 2015). But the court there did not address the potential that a jury could find the officer acted only negligently and instead assumed that, because claims against the officer and the City required willful and wanton conduct, the *Lockett* exception did not apply. The Court agrees that the claims here would be duplicative if both required mere negligence but, as discussed above, cannot find the same holds true for willful and wanton conduct claims. *See Farnik v. Chicago Police Dep't*, No. 14 C 3899, Doc. 63 (N.D. Ill. July 13, 2015) (dismissing negligent hiring, supervision, and training claims against City as duplicative while refusing to dismiss willful and wanton conduct claim against City on the same basis).

5

not have anticipated in the complaint, the Court may dismiss a claim based on an affirmative defense where the plaintiff has pleaded herself out of court. *See Van Meter v. Darien Park Dist.*, 799 N.E.2d 273, 284, 207 Ill. 2d 359, 278 Ill. Dec. 555 (2003). First, the City argues that § 2-201 of the Illinois Tort Immunity Act applies, which provides that "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 Ill. Comp. Stat. 10/2-201. Read together with § 2-109, § 2-201 applies to the City's actions or omissions as well. *See Monson v. City of Danville*, --- N.E.2d ----, 2018 IL 122486, ¶ 16 (2018). A policy decision, for immunity purposes, requires the municipality to balance competing interests and make judgment calls as to which course of action best serves those interests. *Van Meter*, 799 N.E.2d at 281–82. Discretionary acts are those unique to a particular public office, while ministerial acts, which do not warrant immunity, are those performed on a given state of facts in a prescribed manner, under a mandate of legal authority and without any reference to discretion. *Snyder v. Curran Twp.*, 657 N.E.2d 988, 993, 167 Ill. 2d 466, 212 Ill. Dec. 643 (1995). "Whether an act or omission is classified as discretionary within the meaning of § 2-201 escapes precise formulation and should be made on a case-by-case basis in light of the particular facts and circumstances." *Monson*, 2018 IL 122486, ¶ 29. For § 2-201 immunity to apply, the City must establish that its actions or omissions amounted to both a policy determination and an exercise of discretion. *Van Meter*, 799 N.E.2d at 283.

Although some courts agree with the City that training decisions involve the determination of policy and the exercise of discretion, the majority of these decisions have come at the summary judgment stage, where the court has before it evidence concerning the

municipality's training, discipline, and supervision policies. *See LaPorta v. City of Chicago*, 277 F. Supp. 3d 969, 998–99 (N.D. Ill. 2017) (collecting cases deciding § 2-201 immunity issue on summary judgment). The City relies on *Taylor v. City of Chicago*, in which the court found at the motion to dismiss stage that § 2-201 applied to training decisions. No. 96 C 1797, 1997 WL 51445, at *4 (N.D. Ill. Feb. 3, 1997). But the *Taylor* court only addressed the discretionary aspect of § 2-201 immunity and not whether the training decisions also involved policy determinations. *Id.* Here, nothing in the first amended complaint establishes that the training decisions at issue are discretionary, as opposed to ministerial, as well as determinations of policy. *See White v. City of Chicago*, No. 14 cv 3720, 2016 WL 4270152, at *8–9 (N.D. Ill. Aug. 15, 2016) ("[T]he Court cannot determine from White's allegations alone that the City's training and supervision of the police officer . . . required both a determination of policy and the exercise of discretion."); *McDonald v. Camarillo*, No. 10 C 1233, 2010 WL 4483314, at *2 (N.D. Ill. Nov. 1, 2010) ("Though both [a determination of policy and an exercise of discretion] are often involved in supervising employees, this is not enough to require dismissal. Rather, the complaint must plainly reveal everything necessary to satisfy the affirmative defense. The act of supervision could just as well be ministerial, and the City does not point to any allegations in the complaint to contradict this possibility." (citations omitted) (internal quotation marks omitted)); *Patton v. Chicago Heights*, No. 09 C 5566, 2010 WL 1813478, at *3 (N.D. Ill. May 3, 2010) ("[W]hile intuitively, it would seem that the training of police officers would require discretion and involve policy determinations, cases are not to be decided on the basis of intuition."). Love's allegations about the existence of a code of silence do not foreclose finding at this stage that training decisions on the use of force could qualify as ministerial acts. Because the Illinois Supreme Court instructs the Court to make immunity determinations on a case-by-case basis, the

Court does not find at this time that § 2-201 immunity bars Love's claims. *See Smith v. City of Chicago*, 143 F. Supp. 3d 741, 762 (N.D. Ill. 2015) (refusing to dismiss negligent supervision claims based on § 2-201 immunity at the motion to dismiss stage).

The City also argues that § 4-102 bars Love's claims. Section 4-102 provides immunity to public entities for "failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals." 745 Ill. Comp. Stat. 10/4-102. The City relies on *DeSmet ex rel. Estate of Hays v. County of Rock Island*, where the Illinois Supreme Court found that allegations that the county failed to train and supervise its employees concerning dispatch services responding to requests for police assistance "implicate the structural adequacy of police protection services that defendants provided to the general public." 848 N.E.2d 1030, 1041, 219 Ill. 2d 497, 302 Ill. Dec. 466 (2006). Love responds that the City's failure to train its officers on the use of force continuum does not implicate the failure of police protection services. "[A] claim based on failure to train does not always 'implicate the structural adequacy of police protection services'" that defendants provided to the general public. *LaFond v. City of Kankakee*, No. 09-CV-2222, 2010 WL 503009, at *4 (C.D. Ill. Feb. 8, 2010) (quoting *DeSmet*, 848 N.E.2d at 1041). Courts have applied § 4-102 immunity to "[p]olice efforts to aid, assist, or rescue individuals." *Payne v. City of Chicago*, 16 N.E.3d 110, 119, 2014 IL App (1st) 123010, 384 Ill. Dec. 14 (2014) (collecting cases). The immunity also applies to the failure to prevent a crime. *White*, 2016 WL 4270152, at *9 (citing *Bollinger v. Schneider*, 381 N.E.2d 849, 851, 64 Ill. App. 3d 758, 21 Ill. Dec. 522 (1978)). The City and Defendant Officers' alleged actions here do not fit neatly into these accepted forms of providing police protection services. The City's training on the use of force does not appear to implicate the structural adequacy of police protection services to the

8

general public. *See White*, 2016 WL 4270152, at *10 (collecting cases rejecting application of § 4-102 to negligent hiring and supervision claims or claims addressing the City's duty to specific individuals and not the community at large). Instead, it involves how its officers execute and enforce the law when responding to reports of crime or breaches of the peace, addressed by § 2-202 of the Illinois Tort Immunity Act. *See Estate of McIntosh v. City of Chicago*, No. 15 C 1920, 2015 WL 5164080, at *4–5 (N.D. Ill. Sept. 2, 2015) (discussing the applicability of §§ 2-202 and 4-102 to allegations of officers chasing an unarmed individual and firing shots that killed him, and noting that § 2-202, and not § 4-102, would apply if the officers "were responding to a call that a crime may have just been committed, or . . . investigating a crime or traffic accident, making an arrest or issuing a citation, or quelling a public breach of peace"). At this stage, then, the Court cannot find that § 4-102 bars Love's independent state law claims against the City and allows them to proceed.

## II.  Motion to Bifurcate

Separately, the City asks the Court to bifurcate the *Monell* claims and stay *Monell* discovery. It also asks the Court to enter its proposed "Limited Consent to Entry of Judgment against Defendant City of Chicago." Rule 42(b) allows the Court to bifurcate a trial "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b); *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007) (bifurcation appropriate if it will "prevent prejudice to a party or promote judicial economy"). "Only one of these criteria need be satisfied for a court to order a separate trial." *Berry v. Deloney*, 28 F.3d 604, 610 (7th Cir. 1994) (quoting *DeWitt, Porter, Huggett v. Kovalic*, 991 F.2d 1243, 1245 (7th Cir. 1993)). The Court has considerable discretion in deciding whether to bifurcate a trial. *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000).

First, the City argues that bifurcation furthers judicial economy by allowing it to avoid burdensome discovery and litigation costs that may be unnecessary if Love cannot establish an underlying constitutional violation. Typically, a plaintiff cannot prevail on a *Monell* claim without first establishing an underlying constitutional violation. *Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986)) ("If the plaintiff fails to prove a violation of his constitutional rights in his claim against the individual defendants, there will be no viable *Monell* claim based on the same allegations."). But a *Monell* claim may proceed against a municipality even without its officers being held liable unless doing so would create an inconsistent verdict.[4] *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010). Here, Love argues that her *Monell* claim does not depend on the use of excessive force and so she need not first establish an underlying constitutional violation. *See Obrycka v. City of Chicago*, No. 07 C 2372, 2012 WL 601810, at *11 (N.D. Ill. Feb. 23, 2012) (concluding that *Monell* substantive due process claim based on a *de facto* policy of concealing or suppressing officer misconduct investigations did not depend on the officer's violation of her constitutional rights, especially where the officer "was not involved in any such investigations"). The determination of this question, however, does not dispose of the bifurcation issue because, as discussed above, Love also pursues a state law claim based on some of the same City policies and practices. The City has not moved to bifurcate the state law independent claims against the City, meaning that discovery and litigation involving the same conduct would proceed even if the Court bifurcated the *Monell* claim and stayed related discovery.

---

[4] Pursuant to this principle, the City acknowledges that a *Monell* claim can proceed against a municipality where qualified immunity applies to the officers' actions. The City's proposed Limited Consent waives qualified immunity upon a finding of an underlying constitutional violation.

For the same reason, the Court discounts the City's arguments of potentially burdensome and unnecessary discovery. Love indicates that the City has already turned over documents concerning its policies and procedures, with *Monell*-related information exchanged even before the removal of this case to federal court. The City's disclosures of potential witnesses also significantly overlap with those of the Defendant Officers, suggesting bifurcation could be inefficient and require deposing the same individuals twice. And, at least at this point, Love has tailored her additional *Monell*-related discovery to previous incidents involving the Defendant Officers and complaints or charges arising from City police officers planting evidence or receiving self-inflicted wounds. This discovery overlaps with that needed by Love on her state law claims against the City, meaning that bifurcation could result in additional complexity and confusion over what discovery can proceed. *See Cadle v. City of Chicago*, No. 15 C 4725, 2015 WL 6742070, at *2 (N.D. Ill. Nov. 2, 2015) ("A stay of *Monell* discovery could, and often does, give rise to arguments about whether Plaintiff's discovery requests relate to his *Monell* claim or to his other claims."). To the extent the City finds Love's *Monell* discovery requests overly broad or unduly burdensome, after engaging in the required meet and confer process, the parties can seek the Court's assistance in tailoring the requests.

As for prejudice, the Court finds the City's concerns premature at this stage, particularly where the City does not contend that the independent state law claims against it would cause similar prejudice. The Court cannot determine the evidence the parties intend to introduce at trial, making it difficult to assess the potential prejudice the Defendant Officers and the City would face if the individual and municipal liability claims proceeded to trial together. *See Estate of McIntosh*, 2015 WL 5164080, at *9 (finding undue prejudice analysis "premature and too speculative" at the early stages of the case). Additionally, the Court does not find the City's

11

concerns of potential prejudice to Love proper, where Love is the master of her complaint and has chosen to pursue both individual and municipal liability claims. *See Cadle*, 2015 WL 6742070, at *3 (discounting City's argument that plaintiff would be prejudiced if *Monell* claims were not bifurcated). The Court has at its disposal means to address potential prejudice at trial, including through the use of limiting instructions, but it would also consider a renewed motion to bifurcate prior to trial based on specific evidence the parties intend to present on the individual and municipal liability claims. *Jackson v. City of Chicago*, No. 14 C 6746, 2017 WL 8199322, at *3 (N.D. Ill. Dec. 12, 2017) ("[T]he better time to evaluate [prejudice from trying individual and *Monell* claims together] is shortly before trial, when the court (and the parties) will have a much better understanding of the evidence and its relevance to the individual and *Monell* claims.").

Finally, the City argues that bifurcation and entry of the Limited Consent would save Love the burden of litigating a *Monell* claim while still allowing her to obtain the same judgment for compensatory damages. Although bifurcation and the Limited Consent would not affect Love's recovery of compensatory damages, the Court finds this reason does not on its own warrant bifurcation. Non-economic reasons exist for Love to separately pursue her *Monell*-related claims, and she should have the ability to test those claims by presenting evidence that the City's policies and procedures violated Derek's constitutional rights. *See Estate of McIntosh*, 2015 WL 5164080, at *9–10 (noting that non-economic reasons exist for pursuing a *Monell* claim that are not addressed by entering a consent to judgment). Having considered the relevant factors, the Court does not find bifurcation of the *Monell* claims warranted at this time.

## CONCLUSION

For the foregoing reasons, the Court denies the City's motion to dismiss [28] and motion to bifurcate the *Monell* claims and stay *Monell* discovery [32].

Dated: January 28, 2019

_____
SARA L. ELLIS
United States District Judge